APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
1115 South 900 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **TARA JOHNSON,**<br><br>        Plaintiff,<br><br>vs.<br><br>**ACTION TARGET**;<br><br>        Defendant. | **COMPLAINT**<br><br>(Jury Demanded)<br><br>Case No. 2:12-cv-01190-EJF<br><br>Judge Evelyn J. Furse |

Plaintiff Tara Johnson ("Johnson") complains and alleges against Defendant Action Target as follows:

### NATURE OF CASE

This is an action for damages due to discrimination in employment by Defendant based on gender and religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

### PARTIES, JURISDICTION, AND VENUE

1.      Johnson is an individual, currently residing in Alaska.

2.      Defendant Action Target is a corporation doing business in Utah County in the state of Utah, and was the employer of Johnson in the state of Utah during the relevant time periods.

3.      The conduct at issue in this case occurred in Utah County, Utah.

4.      This court has jurisdiction over the actions asserted herein pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

### ADMINISTRATIVE PROCEEDINGS

6.      Johnson filed a timely Charge of Discrimination with the Utah Antidiscrimination and Labor Division ("UALD") and the U.S. Equal Employment Opportunity Commission ("EEOC") following her termination by Defendant, alleging gender and religious discrimination by Defendant.

7.      The EEOC issued a Right to Sue letter dated September 20, 2012, attached hereto as Exhibit A.  Therefore all administrative prerequisites have been met.

### GENERAL ALLEGATIONS

8.      Johnson began working for Action Target in its customer service department in December 2007.

9.      On her first day of work, Johnson's supervisor asked her if she was a member of the Church of Latter-Day Saints.

10.     When she responded that she was not, he informed her that the company did not allow employees to come to work drunk or to drink alcohol at work.

11.     Action Target employed a very small percentage of female employees.

12.    From the beginning of her employment at Action Target, Johnson was treated differently than her male coworkers.

13.    For instance, her male coworkers in the customer service department traveled to Action Target installations throughout the United States and foreign countries to obtain product knowledge and training, but Johnson was never provided these opportunities.

14.    When Johnson asked her supervisor, Chris Ream, and his supervisor, Ernest John, about visiting installations, Mr. John told her "it would not make good business sense to send a woman into the field." Mr. John explained that customers might not be comfortable with a woman representative, and it would make travel more expensive for the company because she would need her own hotel room.

15.    Johnson's performance was excellent, and she received the company's "On the Ball Award" for her good performance.

16.    Nonetheless, after several months, Action Target hired a male employee, whom Johnson was expected to train, at a higher salary rate than her.

17.    Mr. John told Johnson several times that she had reached the highest level in the customer service department, because she could not go visit the company's installations, due to the perception that customers would not be comfortable with a woman representative.

18.    In order to advance within the company, Johnson applied for a job as a sale representative. She was hired as the manager for the Northwest territory in June 2009, becoming the company's only female sales representative.

19.    Johnson's new supervisor told her that the Northwest was a "dead territory," and that he hoped she would eventually be able to generate sales of a million dollars per year.

20.     When she was promoted, Tom Wright, Action Target's CEO, told Johnson when she got married, the company would bring her back to Utah so she could focus on having a family because that was "what you are supposed to do."

21.     Mr. Wright said openly that women should not get educations, unless it was to make them better mothers.

22.     This attitude towards women by Mr. Wright and other men in the company resulted in a pattern and practice of discrimination against the female employees, in the form of lower pay, less training opportunities, limited "suitable" positions, and less mobility within the company.

23.     In Johnson's new position, as in customer service, she was treated differently than her male colleagues.  Her photograph was never posted on the website like all the male representatives, she was never given a company cell phone.  She was also not provided with a mentor as the male representatives were; she was told this was because it "would not look right" for a man to travel with her.

24.     When the company moved to a new facility in Provo's Mountain Vista Business Park, all the sales representatives were given their own office, except Johnson.  She was forced to work in a space intended to be used by visiting customers or consultants, which had no phone, computer, or internet service.

25.     Johnson was humiliated by this treatment, and was made the butt of many office jokes by other sales representatives.

26.     Johnson was treated differently than the other sales representatives in the terms of her compensation as well.  For instance, she was given an annual draw of $45,000 against

commissions.  Although several of the male sales representatives drew more from their draw than they earned in commissions, the company forgave those shortfalls and started them over with a new draw after the first year.

27.    Johnson, however, was not provided the opportunity to start over, and the company claimed that the fact that she drew more than she earned in commissions was an example of her poor performance.

28.    When calculated on an annual basis, Johnson's sales for her first year as a territory manager were better than those of her male predecessor in the same territory.

29.    In August 2010, Johnson was moved into an international sales position, under the supervision of Adam White.  Johnson learned that she was replacing a salesman who had made numerous mistakes that cost the company significant profits.  Her predecessor was not terminated, but was moved to another position within the company.

30.    When she was moved to the international position, the Vice President of Sales, Randy Graham, informed her that she was still responsible for the Northwest territory.  It was impossible, however, for Johnson to successfully do two full-time jobs.

31.    In her entire tenure with Action Target, Johnson was never given any performance review, discipline, goals to achieve, or criticism of any kind.

32.    Nonetheless, on October 21, 2010, Johnson was terminated without warning.  The explanation she was given was that she was "a square peg trying to fit in a round hole."

33.    She was told that the only notes about her performance in her personnel file were positive.

34.     Action Target's practice was to pay sales representatives commissions they earned on sales they made even after they left the company.  Johnson, however, was not paid the commissions she earned on three substantial sales worth a total of nearly $500,000 prior to her transfer from the Northwest territory. Instead, her male successor in the Northwest territory was told that he would be given the commissions that she had earned.

35.     After she was terminated, Johnson learned that Action Target solicited negative comments from potential customers to supports its termination of her.

36.     Action Target hired a former male employee, who had been listed as "unrehireable" due to poor performance, to replace her.

37.     Johnson suffered considerable economic damages due to her termination, in lost wages and medical expenses that she had to pay out-of-pocket after she lost the health insurance she had through Action Target.

38.     She has also suffered emotional distress due to the long period of unemployment and under-employment she experienced after her termination.

**FIRST CAUSE OF ACTION**
**(Discrimination on the Basis of Sex, in Violation of Title VII)**

39.     Johnson incorporates paragraphs 1 through 38, as if fully set forth herein.

40.     During her employment with Action Target, Johnson was discriminated against on the basis of sex in many ways, including but not limited to: lower pay, less training opportunities, less access to company facilities, and different pay structure.

41.     Action Target engaged in a pattern and practice of such conduct, subjecting all of its female employees to similar treatment.

42.     Ultimately, Johnson was terminated because she was a woman, and/or to make room for a man.

43.     Even after she was terminated, she was discriminated against, when her male successor was offered the commissions that she had earned.

44.     The discriminatory conduct by Action Target caused Johnson significant damages that she is entitled to recover.

45.     Action Target acted with malice or reckless disregard of Johnson's rights, and therefore, the company is liable for punitive damages.

46.     Johnson is also entitled to recover her attorneys' fees and other costs of this action.

## SECOND CAUSE OF ACTION
### (Discrimination on the Basis of Religion, in Violation of Title VII)

47.     Johnson incorporates paragraphs 1 through 46, as if fully set forth herein.

48.     During her employment with Action Target, Johnson was discriminated against on the basis of her religion, in that her opportunities within the company were limited by management's view of women's roles, which was shaped by their own religion.

49.     Johnson is entitled to recover damages due to Action Target's discrimination against her, as well as attorneys' fees and other costs of this action.

50.     Action Target acted with malice or reckless disregard of Johnson's rights, and therefore, the company is liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Johnson respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

a.    Back pay;

b.    Reinstatement, or front pay;

c.    Compensatory and consequential damages;

d.    Punitive damages, in substantial, appropriate, and reasonable

amounts;

e.    Pre-judgment and post-judgment interest at the highest lawful rate;

f.    Attorneys' fees and costs of this action, as appropriate; and

g.    Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this _20th___ day of December, 2012.

**HOLLINGSWORTH LAW OFFICE, LLC**

/s/ April L. Hollingsworth_____
April L. Hollingsworth
Attorney for Plaintiff